IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 21-CR-30068-SPM |
| JOSEPH P. COUNTS, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a *pro se* Motion to Quash Arrest and for Suppression of Evidence filed by Defendant Joseph P. Counts. (Doc. 233). The United States filed a Response. (Doc. 236). For the reasons set forth below, the Motion is **DENIED**.

### Factual & Procedural Background

On April 26, 2021, Law Enforcement Officers from the Illinois State Police encountered Defendant Joseph Counts when his vehicle was stuck on top of a rocky hill at 1:30 AM. (Doc. 236, p. 1). Officers stated that Defendant Counts smelled strongly of alcohol and had a pistol holstered inside the waistband of his pants. (*Id.*, p. 2). After a multi-hour standoff during which Defendant Counts continued to enter and exit his vehicle and brandished his weapon against multiple Officers, Defendant Counts was tased and apprehended. (*Id.*, pp. 3–5). He had a loaded .40 caliber Glock pistol on his person and various firearms and magazines in his vehicle, including a loaded Bushmaster 5.56 caliber rifle, a Rock River Arms short-barreled rifle, a 9 mm

Glock pistol, a .45 caliber Kimber pistol, and a number of magazines for all of the above. (*Id.*, p. 6). Defendant Counts admitted during interrogation that he had not registered the short-barreled rifle after replacing the factory-made rifle upper with a shorter one. (*Id.*). He was subsequently charged with possession of an unregistered firearm in violation of 26 U.S.C. § 841, 5861(d), and 5871. (*See* Doc. 12).

Defendant Counts pleaded not guilty in June 2021. Defendant Counts's trial date was incrementally continued following this date for various reasons. At the Final Pretrial Conference held on August 6, 2024, Defendant Counts indicated that he wished to file a motion to suppress all evidence and statements obtained pursuant to his encounter with police and the search of his vehicle. Attorney Jeffrey Goldfarb, counsel of record for Defendant Counts, indicated that he did not believe the argument to be meritorious and was thus unwilling to argue a motion for which he believed there was no legal basis. The Court permitted Defendant Counts to file a motion to suppress *pro se*; this motion was filed on August 12, 2024. (*See* Doc. 233). The Government responded on August 14, 2024. (*See* Docs. 236, 237). A hearing on the Motion to Suppress was held on August 19, 2024. (*See* Doc. 243).

## LEGAL STANDARD

A motion to suppress seeks to exclude evidence obtained in violation of a defendant's constitutional rights. The Fourth Amendment provides "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. CONST. amend. IV. The Supreme Court has explained that "[i]n order to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, this Court long ago conferred upon

defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial evidence which had been secured by means of an unlawful search and seizure." *Simmons v. United States*, 390 U.S. 377, 389 (1968). The Fourth Amendment generally prohibits the warrantless entry of a person's home or hotel room to search for specific objects. *See Illinois v. Rodriguez,* 497 U.S. 177, 181 (1990). However, this prohibition does not apply to situations in which voluntary consent has been obtained from the individual whose property is to be searched. *Id.* Put another way, warrantless searches are permissible if the police received voluntary consent to search. *See U.S. v. Hicks,* 650 F.3d 1058, 1064 (7th Cir. 2011).

Regarding the suppression of statements, to protect an individual's right against self-incrimination, a suspect must be advised of certain rights prior to being subjected to custodial interrogation. *See Miranda v. Arizona,* 384 U.S. 436, 444 (1966).

## ANALYSIS

In his Motion to Suppress and at Oral Argument, Defendant Counts argues that Sergeant Ewing did not have probable cause to detain him and that he used excessive force in violation of the Fourth Amendment to the United States Constitution. (*See* Doc. 233). He argues that he was not aware of the restrictive firearms regulations in Illinois and argues that Sgt. Ewing was in an "unmarked cruiser and plain uniform." (*See* Doc. 243).

The Government argues that "[n]owhere in Counts' motion does he raise a disputed issue of material fact." (Doc. 236, p. 7 (citing Doc. 233)). They argue that "Sgt. Ewing had authority under Illinois law to request Counts' firearm, even if

otherwise lawfully possessed, for purposes of safekeeping during his investigation." (*Id.*, p. 8 (citing 430 ILL. COMP. STAT. 66/10(h-1))). They argue that "[w]hen Counts failed to comply with lawful commands while armed outside of his vehicle with a concealed weapon, there was probable cause to arrest Counts for Resisting Arrest/Obstructing Law Enforcement." (*Id.*, p. 8). The Government argues that "Sgt. Ewing had probable cause to arrest Counts for numerous violations of law" including "Sgt. Ewing's observations of Counts' smelling like alcohol with bloodshot and glassy eyes after exiting the driver seat of his vehicle, his suspended driver's license, his drawing of a firearm in response to law enforcement presence, and his resistance of law enforcement commands." (*Id.*, pp. 8–9).

Moreover, "[t]he dash camera video footage documents these observations and interactions" which are also documented in Sgt. Ewing's filed report. (*Id.*, p. 9 (citing Gov. Exs. 1-1, 1-2, 1-3, 1-4; sealed Gov. Ex. 2)). They also argue that the search of Count's vehicle was an inventory search, "a well-recognized exception to the warrant requirement [that is] reasonable under the Fourth Amendment." (*Id.* (citing *South Dakota v. Opperman*, 428 U.S. 364, 376 (1976); *United States v. Cartwright*, 630 F.3d 610, 613 (7th Cir. 2010))). Finally, they also argue that "[t]he inevitable discovery doctrine states that even if an item was seized illegally, it need not be suppressed if the government establishes by a preponderance of the evidence that the troopers would have discovered it by lawful means." (*Id.*, p. 10 (citing *United States v. Stotler*, 591 F.3d 935, 940 (7th Cir. 2010))).

The Fourth Amendment to the Constitution provides that:

The right of the people to be secure in their persons, houses, papers and

> effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

U.S. CONST. Amend. IV. "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Under the automobile exception to the warrant requirement, police may conduct a warrantless search of an automobile if they have probable cause to believe the vehicle contains evidence of criminal activity. *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014). "Probable cause to search exists where, based on the known facts and circumstances, a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *United States v. Williams*, 627 F.3d 247, 251 (7th Cir. 2010). The search may extend to "any area of the vehicle in which the evidence might be found." *Arizona v. Gant*, 556 U.S. 332, 347 (2009).

To address Defendant Counts's arguments, because the protections of the Fourth Amendment are limited in scope to unreasonable searches and seizures, the Court must find the touchpoint where Fourth Amendment concerns were first implicated and then assess whether a violation occurred. *See United States v. Ford*, 333 F.3d 839, 844 (7th Cir. 2003). Initially, it is important to state that reasonable suspicion is only required when a suspect has been seized. *See United States v. Douglass*, 467 F.3d 621, 623 (7th Cir. 2006). If a reasonable person feels free to disregard the police and go back to whatever he was doing, reasonable suspicion is

not required. *See Fla. v. Bostick*, 501 U.S. 429, 434 (1991). A seizure occurs when the suspect yields to a show of authority. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991). According to Sgt. Ewing's report, Defendant Counts did not submit to the show of authority—he ignored Sgt. Ewing's orders and entered and exited his vehicle multiple times (facts that are corroborated by the dashcam footage from the night in question). At this point he was not seized under the Fourth Amendment. It was not until Defendant Counts was tased that a seizure occurred.

At that point, reasonable suspicion was required. In determining whether reasonable suspicion for a stop exists, the Court must "evaluate, under an objective standard, the totality of the circumstances known to [the officer] at the time and determine if a reasonable officer in those circumstances would have been suspicious." *Ford*, 333 F.3d at 834. Here, the Government relies on Sgt. Ewing's report and on the dashcam footage showing Defendant Counts refusing to comply with lawful orders, entering and exiting his vehicle multiple times in addition to brandishing his firearm.

Evasive behavior is a factor to consider when determining reasonable suspicion. *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (citing *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975); *Florida v. Rodriguez*, 469 U.S. 1, 6 (1984); *United States v. Sokolow*, 490 U.S. 1, 8-9 (1989)). While a person has the right to ignore police approaching to ask questions, flight runs counter to that. *Id.* at 125. Sgt. Ewing's report and the dashcam footage shows that Defendant Counts had a holstered pistol in the waistband of his pants that he brandished during the encounter with Law Enforcement. While gun possession by itself is not inherently unlawful, licensed concealed carry remains the only legal way to bear a firearm in

public in Illinois because open-carry of a firearm is a crime of "Aggravated unlawful use of a weapon." *See* 720 ILL. COMP. STAT. 5/24-1.6(a).

Together, these factors provided, at bare minimum, reasonable suspicion to seize Defendant Counts and use the least intrusive means to verify or dispel Sgt. Ewing's suspicion in a short period of time. This led Sgt. Ewing to inquire as to whether Defendant Counts had a FOID card. But, again, even Defendant Counts' FOID card ownership would not have dispelled Sgt. Ewing's suspicion about the open-carry violation. Sgt. Ewing could only dispel his suspicion that Defendant Counts was open-carrying a weapon in violation of Illinois firearms laws by searching the vehicle, which he did, leading to the discovery of multiple firearms including the unregistered Rock River Arms short-barreled rifle at issue in this case.

Furthermore, while drawing weapons and handcuffing an individual does not necessarily convert an officer's stop into an arrest, especially when officer safety is a concern, *see United States v. Olson*, 41 F.4th 792, 799 (7th Cir. 2022), the circumstances show that Sgt. Ewing had probable cause to effectuate a full-blown arrest and search of Defendant Counts's vehicle at this point. A prudent person with the officers' knowledge and experience would be more than just suspicious that Defendant Counts open-carried a firearm; in fact, he brandished it in front of them. Therefore, assuming an arrest occurred, that arrest was valid and the ensuing search incident to arrest justified the recovery of the firearms.

In summary, the facts known to Sgt. Ewing supported a search of the vehicle. Defendant Counts "failed to comply with lawful commands while armed outside of his vehicle with a concealed weapon" and Sgt. Ewing noted that Defendant Counts

"smell[ed] like alcohol with bloodshot and glassy eyes after exiting the driver seat of his vehicle," had a suspended driver's license, and drew his firearm. (Doc. 236, pp. 8–9). During his interview in which he waived his *Miranda* rights, Defendant Counts admitted that he had been drinking, that he refused to follow Sgt. Ewing's commands, that he drew his firearm, and that he modified his Rock River Arms rifle by swapping out the barrel. (*See id.*, p. 6).

Defendant Counts's arguments regarding whether or not Sgt. Ewing was wearing an identifiable uniform, whether or not Sgt. Ewing's vehicle was identifiable as a police vehicle, and whether or not he had adequate notice of Illinois's firearms laws are without merit. The Supreme Court has held it to be axiomatic that ignorance of the law is not an excuse. *See Cheek v. United States*, 498 U.S. 192, 199 (1991) (citations omitted). Moreover, Counts's discussion of outstanding warrants in Maine have no bearing on this case. Therefore, Defendant Counts's attempts to cast doubt on whether or not Sgt. Ewing had probable cause to search his vehicle fail and his Motion to Suppress must be denied.

## Conclusion

For the foregoing reasons, Defendant Joseph P. Counts's Motion to Quash Arrest and for Suppression of Evidence (Doc. 233) is **DENIED**.

**IT IS SO ORDERED.**

**DATED:** August 19, 2024

s/ *Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**
